**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**PETRUS BERNARDUS ANTONIUS VIEGERS, Defendant**

Criminal No. 1994-143

District Court of the Virgin Islands

Div. of St. Thomas and St. John

November 7, 1994

MOORE, *Chief Judge*

## MEMORANDUM

This matter came before the Court on October 27, 1994 for a hearing on the defendant's various motions to suppress all evi-

dence resulting from the search of defendant's vessel, to dismiss the information and return the seized vessel, and to compel the government to provide a list of witnesses it intends to call at trial. The motions will be addressed *seriatim*.

■ The first two motions both involve a challenge to the propriety of the Coast Guard's boarding and search of defendant's vessel on the high seas. The United States presented uncontested testimony that the Coast Guard secured permission from the Captain, defendant Viegers, to board. Defendant argues that the case law requires the Coast Guard to have a reasonable suspicion before even approaching a foreign flagged vessel on the high seas. However, the defendant has cited, and the Court has found, no cases which support this contention. Some courts have articulated the principle that foreign vessels are not to be "unreasonably interfered" with. See, e.g. United States v. Williams, 617 F.2d 1063, 1073 n.6 (5th Cir. 1980). Simply approaching and hailing a vessel does not rise to the level of unreasonable interference.[1] Furthermore, testimony of Coast Guard Lieutenant Jimenez established that the Coast Guard initiated its investigations that day pursuant to intelligence that a group of aliens were attempting illegal entry on a sailing vessel bound from St. Martin, as defendant's vessel apparently was. Taken as a whole, these facts establish the propriety of the initial boarding by a preponderance of the evidence.

■ Defendant also argues that 8 U.S.C. § 1324(a) does not have extra-territorial application. As the Supreme Court explained in United States v. Bowman, 260 U.S. 94, 67 L. Ed. 149, 43 S. Ct. 39 (1922), limiting the locus of some Criminal statutes to the strictly territorial jurisdiction of the government would greatly curtail the scope and usefulness of their prohibitions. "In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries,

---

[1] Even if such precedent were to be found, it would not necessarily support defendant's motion. Subtleties in the case at bar, namely the fact that defendant's vessel flew flags of both the Netherlands and the United States, might dictate a different result. It is well established that the Coast Guard has authority to board any vessel of American flag anywhere on the high seas in the complete absence of suspicion of Criminal activity. See, e.g., United States v. Purvis, 768 F.2d 1237, (11th Cir. 1985), cert. denied, 475 U.S. 1011, 89 L. Ed. 2d 302, 106 S. Ct. 1186 (1986).

but allows it to be inferred from the nature of the offense." *Id.* at 98. The Court agrees with the reasoning of the Ninth Circuit in United States v. Castillo-Felix, 539 F.2d 9 (9th Cir. 1976) and United States v. Aguilar, 883 F.2d 662 (9th Cir. 1989) (relyinq on Bowman) that it may be inferred from the nature of immigration offenses that Congress intended section 1324(a) to have extra-territorial application.

In United States v. Wright-Barker, 784 F.2d 161 (3d Cir. 1986), the Third Circuit applied the Bowman analysis to determine that statutes which criminalize conspiracies to import contraband were also intended to be applied extra-territorially. The Court of Appeals also recognized that the offenses in question must pass the "traditional requirement of international law that a state apply Criminal jurisdiction to acts Committed outside its territorial borders only where an effect occurs within those borders," noting that this rule has evolved into a less stringent requirement that permits jurisdiction "even where an effect is intended but not accomplished in the forum state's territory." Id. at 167-168. (citing, inter alia, the Restatement (Revised) of the Foreign Relations Law of the United States § 402).

Following the analysis of Wright-Barker, the Court finds that the defendant's intended importation of illegal aliens into the United States would indeed have a foreseeable, harmful effect meriting the attention of federal law enforcement authorities. Furthermore, there appears to be little likelihood that the enforcement of this statute extra-territorially will conflict with the desires of other nations to stem the flow of illegal immigration into their own countries. Thus, under the facts of this case, extra-territorial application of section 1324(a) is reasonable.

The Court finds, by preponderance of the evidence, that Lt. Jimenez' accidental discovery of the aliens aboard defendant's vessel was not the product of an illegal search beyond the bounds of the officer's license to board the Vessel and make inspections of its papers and passengers. Accordingly, defendant's motions to suppress and to dismiss and to return the seized vessel will be denied.

Finally, as defendant has made no specific showing justifying disclosure at this time, the Court will deny the defendant's

motion for a list of witnesses that the government intends to call at trial.

An order to this effect follows.

### ORDER

For the reasons set forth in the attached Memorandum, it is hereby

ORDERED that defendant's motion to suppress is DENIED; it is further

ORDERED that defendant's motion to dismiss and return the seized vessel is DENIED; it is further

ORDERED that defendant's motion for a list of witnesses is also DENIED.